UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY C. HAITHCOX,

      Plaintiff,

v.

MARY GREINER, M.D., ET AL.,

      Defendants.

                                           /

No. 06-11756

District Judge Arthur J. Tarnow

Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

On April 12, 2006, Plaintiff Timothy C. Haithcox filed a *pro se* civil rights complaint under 42 U.S.C. § 1983. On October 18, 2006, the Court granted Plaintiff's motion to appoint *pro bono* counsel, and on January 22, 2007, attorney Abraham Singer filed an appearance on behalf of Plaintiff. The parties stipulated that the complaint could be amended, and on February 22, 2007, an amended complaint was filed [Docket #35].

Before the Court at this time are (1) a motion for summary judgment filed by Defendant Correctional Medical Services ("CMS") [Docket #98]; (2) a motion for summary judgment filed by Defendant Mary Greiner [Docket #99]; and (3) a motion to dismiss, based on discovery violations, filed by Defendants Greiner and CMS [Docket #87]. Although he was ordered to do so, Plaintiff has not filed a response to the summary judgment motions. All three motions have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the motions for summary judgment in Docket #98 and #99 be GRANTED, and that the amended complaint be dismissed as to Defendants CMS and Mary Greiner. I further recommend that the motion to dismiss [Docket #87] be DENIED

AS MOOT.

## I. FACTUAL AND PROCEDURAL HISTORY

In his amended complaint, Plaintiff states that he was a prison inmate in the custody of the Michigan Department of Corrections ("MDOC") during three discrete periods: 1990 to 1993, 1996 to 2000, and 2004 to 2006.[1] *Amended Complaint* [Docket #35], ¶ 11. He alleges that following an injury to his left eye on May 24, 1999, he underwent successful surgery at Duane Waters Hospital. *Id*. ¶¶ 12, 14. In 2004, after experiencing vision problems, he underwent a trabeculectomy at Duane Waters.[2] He continued to experience pain, and underwent further treatment between May and September of 2004. *Id*. ¶ 18. Plaintiff was transferred to the Jackson Correctional Facility on January 5, 2005, and on January 25, 2005 he underwent another surgery. He states that the procedure was not completed, however, because the surgeon, a Dr. Lavery, punctured his finger and left the operating room. Plaintiff alleges that no follow-up surgery was ever scheduled. *Id*. ¶¶ 21-23. He states that after "some delay," he was referred to the Kresge Eye Institute at Hutzel Hospital in Detroit. *Id*. ¶ 24.

Plaintiff alleges that on January 27, 2005, after experiencing a sharp, stabbing pain and bleeding in his left eye, he was seen by Defendant Dr. Greiner, but that she "failed to do anything about the pain or the bleeding." *Id*. ¶ 25. He states that on April 4, 2005, he was returned to Hutzel Hospital for emergency surgery. *Id*. ¶ 31. He alleges that he is completely blind in his left eye, and "legally blind" in his right eye. *Id*. Per 40.

In Count I of the amended complaint, Plaintiff asserts an Eighth Amendment claim

---

[1] Plaintiff is currently on parole.

[2] A trabeculectomy is a surgical procedure that facilitates drainage of the aqueous humor, used for the treatment of glaucoma.

against all Defendants, based on deliberate indifference to his medical needs. As to Dr. Greiner, he specifically states that she "failed to provide adequate medical care when she failed to inform the proper people of Mr. Haithcox's complaints and request for medical assistance, in addition to deliberately ignoring his requests for medical attention to pain and bleeding of Mr. Haithcox's eye; and failing as a medical service provider to remove or have removed stitches in Mr. Haithhcox's eye post surgery." *Id*. ¶ 64. He further claims that Dr. Greiner's actions were in violation of MDOC Policy Directives. *Id.*

Plaintiff asserts no specific claims against Defendant CMS in Count I.

In Count II, Plaintiff asserts a claim of deliberate indifference under the Due Process Clause of the Fourteenth Amendment.

In Count III, Plaintiff asserts a state law claim of intentional infliction of emotional distress.

Finally, in Count IV, Plaintiff asserts a claim of breach of contract by a third party beneficiary against Defendant CMS.

Attached to her summary judgment motion [Docket #99] is the affidavit of Dr. Mary Greiner. She states that she treated the Plaintiff at three office visits at the Gus Harrison Correctional Facility, on December 1, 2004, December 22, 2004, and January 27, 2005. *Greiner Affidavit*, ¶ 2. At the December 1, 2004 visit, Plaintiff complained of a headache and pain in his left eye. *Id.* ¶ 4. Dr. Greiner took a history and performed a physical exam. Assessing known bilateral open angle glaucoma, a history of remote left obit fracture, acute eye pain and headache, she referred him to an eye specialist. She also discussed Plaintiff's condition with Dr. James Forshee, M.D., who approved an ophthalmology referral. *Id.*

Dr. Greiner saw the Plaintiff again on December 22, 2004. This was a follow-up

to an offsite ophthalmology appointment that occurred when Plaintiff was away from the facility on a federal writ. *Id.* ¶ 5. She again conducted an examination, which revealed vision in the right eye of 20/100 and in both eyes at 20/100. She assessed acute open angle glaucoma. Her plan was to reschedule Plaintiff with an eye specialist, and she requested the office notes of the ophthalmologist he had seen while out on the writ. Plaintiff signed the authorization. *Id.* ¶¶ 5-6.

Prior to seeing Dr. Greiner for the third time on January 27, 2005, the Plaintiff saw Dr. Kevin T. Lavery, M.D., an ophthalmologist, who recommended that he follow up with Dr. Dastgir, who had performed the trabeculectomy in 2004. *Greiner's Motion*, Exhibit H. Plaintiff saw Dr. Dastgir on January 11, 2005. Dr. Dastgir's notes (Exhibit A) indicate that Plaintiff was non-compliant with treatment, stating, "In the course that I have followed this patient, he does not follow instructions well and most of the time, he does things opposite to my instructions." *Id*. at 69-71.

On January 26, 2005, Dr. Lavery attempted a trabeculectomy. *Id*. at 73. However, the procedure could not be completed because "the sclera was too thin in the region selected. [Dr. Lavery] was unable to reestablish filtration at the previous trabeculectomy site."[3]

Upon Plaintiff's return to the MDOC on January 27, 2010, he was seen by a physician or a physician's assistant at the prison. Later that day, he was seen again by Dr. Greiner. *Greiner Affidavit*, ¶ 7. Dr. Greiner noted red blood under the conjunctiva, obscuring most of the left eye. She assessed acute angle glaucoma and status post

---

[3] This of course conflicts with Plaintiff's allegation in the amended complaint that the procedure was halted because Dr. Lavery punctured his finger. However, Plaintiff has not filed an opposing affidavit or any other information substantiating his claim that Dr. Lavery in fact punctured his finger.

attempted trabeculectomy. As recommended by Dr. Lavery, she undertook to request an urgent appointment at the Kresge Eye Institute. She faxed appropriate paperwork to CMS, which approved the request the following day, and also called Dr. Forshee. *Id*. This was Dr. Greiner's last involvement with Plaintiff.

No earlier appointment could be obtained at Kresge, but Plaintiff again saw Dr. Lavery on February 1, 2005, at which time Dr. Lavery removed the stitches from the attempted trabeculectomy.[4] *Greiner Motion*, Exhibit H.

On August 22, 2008, attorney Singer withdrew from the case, based on a conflict of interest. Following a stay, attorney Daniel Manville appeared as assigned *pro bono* counsel on June 18, 2009. At a motion hearing on December 16, 2009, attorney Manville orally moved to withdraw as counsel. The Court directed that a written motion to withdraw be filed, with notice to Plaintiff, and entered the following order on December 16, 2009 [Docket #112]:

> "Plaintiff shall file a response to Defendants' Motions for Summary Judgment [Docket #98 and #99] within 30 days of the date of this Order.
>
> "At the hearing on this motion, counsel for Plaintiff orally moved to withdraw from the case, and was directed to file a written motion. Whether or not the motion is granted, and regardless of whether the Plaintiff is proceeding *pro se*, he shall submit as response to the summary judgment motions within 30 days of the date of this Order."

On January 7, 2010, attorney Manville was permitted to withdraw, based on a breakdown of the attorney-client relationship [Docket #110, 114]. Plaintiff has not filed a response to the two summary judgment motions.

---

[4] This contradicts the claim in ¶ 31 of Plaintiff's amended complaint that the stitches were not removed until April 4, 2005. Again, Plaintiff has failed to provide any affidavits, medical records or other material to support his claim.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

## III. DISCUSSION

### A. Defendant Greiner [Docket #99]

Plaintiff claims that Defendant Greiner was deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment.[5]

---

[5] In Count II of the amended complaint, Plaintiff raises the same deliberate indifference claim under the Due Process Clause. However, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a

The Supreme Court has held that Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble,* 429 U.S. 97, 103; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2002). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* Deliberate indifference may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment. *Id.*; *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). However, mere negligence or misdiagnosis of an ailment does not rise to the level of a constitutional violation. *Estelle,* 429 U.S. at 106; *Comstock,* 273 F.3d at 703.

Plaintiff meets the objective prong of the test in that he had a sufficiently serious medical condition. However, he fails the subjective prong. Defendant Greiner has submitted an affidavit, accompanied and supported by treatment notes, showing that on the three occasions that she saw the Plaintiff, she conducted appropriate examinations,

---

particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.' " *Albright v. Oliver,* 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). The Eighth Amendment is the primary source of substantive protection to a prison inmate alleging the denial of medical care. *Whitley v. Albers,* 475 U.S. 312, 319, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)(citing *Estelle v. Gamble,* 429 U.S. 97, 104; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). Therefore, Plaintiff's Fourteenth Amendment claim must be dismissed.

made medical determinations, and (being board certified in family practice) promptly referred the Plaintiff to specialists in ophthalmology.  To the extent that Plaintiff suggests that Dr. Greiner should have undertaken different or more effective treatment, the Eighth Amendment does not permit this Court to second-guess medical judgments or diagnoses.  At most, Plaintiff brings a claim of medical negligence or malpractice, not deliberate indifference. In *Estelle, supra*, the Court recognized that differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnoses or treatment are insufficient to state a deliberate indifference claim. *Id.*, 429 U.S. at 105-06. *See also Westlake v. Lucas,* 537 F.2d 857, 860 at n. 5 (6th Cir.1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law").

Finally, I note again that Plaintiff has failed to respond to the summary judgment motions, and has not filed any opposing affidavits or other material supporting the allegations in his complaint.  In this regard, Fed.R.Civ.P. 56(e) provides:

> "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by deposition, answers to interrogatories, or further affidavits.  *When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment, if appropriate, shall be entered against him.*" (Emphasis added).

The Defendant's proofs stand unrebutted.  Accordingly, the Eighth Amendment claim against Defendant Greiner must be dismissed, as should the claim of intentional

-8-

infliction of emotional distress. To establish a Michigan common law claim of intentional infliction of emotional distress, a plaintiff must show "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Graham v. Ford*, 237 Mich.App. 670, 674, 604 N.W.2d 713 (1999). *See also Roberts v. Auto-Owners Insurance Co.*, 422 Mich. 594, 374 N.W.2d 905 (1985). Liability under this theory requires that the conduct complained of "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Graham*, 237 Mich.App. at 674. This is a demanding standard: It is not sufficient to show that the defendant acted tortiously, intentionally, or even criminally. *Id.* The test has been described as whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Roberts*, 422 Mich. at 603.

Dr. Greiner's unopposed affidavit and other submissions show that she provided appropriate medical care, and was not deliberately indifferent to Plaintiff's medical needs. Her conduct certainly does not constitute intentional infliction of emotional distress.

### B. Defendant CMS [Docket #98]

In Count IV, Plaintiff brings a claim against CMS for breach of contract, as a third party beneficiary. At the time of the alleged events giving rise to this complaint, CMS had a contract with the MDOC to provide medical services to inmates.

There are numerous reasons for Count IV to be dismissed. First, Plaintiff has not offered any evidence showing a breach of the contract between CMS and the MDOC. CMS was contractually obligated to provide medical care to inmates, and in this case, it did exactly that, as shown in the preceding section.

Secondly, Plaintiff does not have standing as a third party beneficiary under M.C.L. § 600.1405, which provides that "[a]ny person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee." A "mere beneficial interest in a contract is not enough to confer standing...a party having the status of a third-party beneficiary to a contract has the same right to enforce that contract as the promisee." *Stillman v. Goldfarb*, 172 Mich.App. 231, 431 N.W.2d 247, 251 (1988). Third party beneficiary status "requires an *express* promise to act to the benefit of the third party; where no such promise exists, that third party cannot maintain an action for breach of the contract." *Dynamic Construction Co. V. Barton Malow Co.*, 214 Mich.App. 425, 428, 543 N.W.2d 31 (1995)(emphasis added).

Finally, engrafting a third party beneficiary theory in what is at its core an Eighth Amendment deliberate indifference claim would be an end run around the vicarious liability rule of *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978), which holds that liability under § 1983 cannot be based on a theory of *respondeat superior*.[6] The Plaintiff cannot evade the strictures of a constitutional claim–or for that matter, a medical malpractice claim–by recasting it as a third party beneficiary claim.

Count IV against Defendant CMS should therefore be dismissed.

---

[6] To establish municipal or corporate liability, a plaintiff must show that the injury resulted from a particular policy. *See Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993). Plaintiff has made no such showing here. Moreover, since the individual Defendants committed no constitutional violations, there obviously can be no liability on the part of CMS.

### C. Motion to Dismiss [Docket #87]

Prior to filing the above motions for summary judgment, Defendants Greiner and CMS filed a motion to dismiss under Fed.R.Civ.P. 37(b), based on Plaintiff's failure to comply with discovery orders. At oral argument on that motion on December 15, 2009, I expressed an inclination to deny the motion because less drastic sanctions had not been considered and any prejudice could be cured. *See Phillips v. Cohen,* 400 F.3d 388, 402 (6th Cir.2005) (to justify dismissal as a discovery sanction under Rule 37(b), courts should consider "(1) evidence of willfulness or bad faith; (2) prejudice to the adversary; (3) whether the violating party had notice of the potential sanction; (4) whether less drastic sanctions have been imposed or ordered"). At the conclusion of that hearing, Plaintiff's *pro bono* counsel orally moved to withdraw.

Since that time, Plaintiff has disregarded this Court's orders to respond to the written motion to withdraw as counsel, and to respond to the above summary judgment motions. In fact, it appears that Plaintiff has effectively abandoned this case. Nevertheless, because the claims against Defendants Greiner and CMS are dismissible on their merits, I recommend that the Rule 37(b) motion be denied as moot.

### IV. CONCLUSION

For the reasons set forth below, I recommend that the motions for summary judgment in Docket #98 and #99 be GRANTED, and that the amended complaint be DISMISSED WITH PREJUDICE as to Defendants CMS and Mary Greiner. I further recommend that the motion to dismiss [Docket #87] be DENIED AS MOOT.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file

specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: March 15, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 15, 2010.

S/G. Wilson<br>
Judicial Assistant

`